# Kistler *v.* Chapot Chamois Company et als., Appellant.

*Will—Charge on land—Mortgage.*

Where a testator directs his executors "to invest" the sum of $10,000 in a particular piece of his real estate, and pay the interest on the same to his wife during her life, and directs that "the principal invested shall revert back to my legal heirs and representatives," and the executors in pursuance of the will execute a mortgage to the widow for the sum of $10,000 on the property specified, providing for the payment of the interest to the widow for life, but wholly omitting any provision for the payment of the principal upon the widow's death, the owner of the real estate at the time of the death of the widow cannot deny liability for the principal, if it appears that he had full notice in his line of title of the mortgage and what it was intended to embrace, and that his predecessors had always treated it as a mortgage and first lien upon the property for unpaid purchase money. In such a case the mortgage is payable to the executor of the testator, and not his children and the representatives of deceased children.

Argued March 14, 1911. Appeal, No. 65, Jan. T., 1911, by The Chapot-Shirlaw Company, etc., defendant, from judgment of C. P. Susquehanna Co., Aug. T., 1904, No. 322, for plaintiffs on case tried by the court without

a jury in suit of Wilson Kistler, Michael D. Kistler, Michael D. Kistler, assignee of Rufus Kistler, Milo Kistler, Elizabeth Kistler, Mary Lesh, Andrew M. Kistler, Harriet Camp, H. Frederick Lesh and Maud K. Jacobs v. The Chapot Chamois Company, The First National Bank of Susquehanna Depot, Pa., The Keystone Chamois Company, and The Chapot-Shirlaw Company, now Pennsylvania Tanning Company. Before FELL, C. J., BROWN, POTTER, ELKIN and MOSCHZISKER, JJ. Reversed.

Ejectment for land in the borough of Great Bend.

The case was tried by FULLER, J., specially presiding, without a jury in accordance with the Act of April 22, 1874, P. L. 109.

In addition to the facts stated in the opinion of the Supreme Court it appeared that Stephen Kistler by his will gave to his sons, Rufus and Milo, the first choice and privilege of taking the land in controversy, which choice and privilege they afterwards exercised. Therein he also provided that "pursuant and according to the authority to me given and reserved in and by an agreement and jointure made and executed in contemplation of and prior to my marriage to my present wife Eliza, bearing date the 16th day of October, A. D. 1878, in and by which my said wife Eliza A. waives her right, dower or thirds at common law in consideration of my performing certain covenants and stipulations therein provided as by reference thereunto had will more fully and largely appear, I give and bequeath unto my said wife Eliza A. during her natural life or so long as she shall remain my widow, the interest of $20,000, and command that my executors hereinafter named so invest the sum of $20,000 immediately after my decease, or as soon after as they may deem convenient, in or on my tannery property at East Stroudsburg and Great Bend, $10,000 in each respectively, for the use of my said wife Eliza A. and pay to her semi-annually the sum of $600, the interest thereof, as long as she shall live or remain my widow. . . . And at

the death or marriage again of my said wife Eliza A., all her interest in my estate, real, personal and mixed, shall cease and together with the principal invested shall revert back to my legal heirs and representatives."

The property therein mentioned as "my tannery property at Great Bend," is the land in suit.

He also provided that all the rest, residue and remainder of his estate should be converted into money as soon as convenient and that the net proceeds of his entire estate should be divided in six equal shares among his six children, Charles, Rufus, Wilson, Milo, Michael D., and Mary (married to Lesh).

He nominated his sons Charles and Wilson as executors, but as the former died a few days after the testator, letters testamentary were issued to his sons Rufus and Wilson.

Stephen Kistler left surviving, his said widow and children. Charles died March 22, 1880, having made a will appointing his brother Wilson executor and leaving his estate to his wife Elizabeth and his two children, Mary (also married to Lesh) and Andrew M. Mary Lesh the elder died October 1, 1893, without a will, leaving heirs, three children, Harriet (married to Camp), Maud (married to Jacobs) and H. Frederick Lesh, no administrator having been appointed.

In pursuance of the directions of the will of Stephen Kistler, the executors, on February 11, 1881, executed, acknowledged and delivered a mortgage to the widow Eliza A. Kistler, bearing date February 11, 1881, recorded March 7, 1881, in Mortgage Book No. 11, p. 70, reciting the antenuptial agreement and the testamentary provision as above, and then proceeding, "Now, therefore, in consideration of the said agreement and marriage settlement, and pursuant to the directions of the said last will and testament and the election of the said Eliza A. Kistler, this indenture witnesseth, that the said Wilson Kistler and Rufus Kistler, executors as aforesaid, for the better securing the payment of the semiannual interest

at six per cent on the said sum of $10,000, the amount to be charged on the tannery property at Great Bend in the county of Susquehanna aforesaid, unto the said Eliza A. Kistler, her executors, administrators or assigns, so long as she the said Eliza A. shall live or remain the widow of the said testator, etc., have granted, bargained, sold, released and confirmed, etc., unto the said Eliza A. Kistler, and her assigns, all that certain tannery property (as described in the writ), to have and to hold unto her, her heirs and assigns, during her natural life or so long as she shall remain the widow of the said Stephen Kistler, deceased," etc.

Rufus Kistler and Milo Kistler having exercised on March 23, 1885, the first choice and privilege above mentioned, conveyed to Michael D. Kistler an undivided one-third of the land, by deed dated November 7, 1885, duly recorded, thus making the three tenants in common, which deed contained this clause, "And subject nevertheless to the payment by the said party of the second part, to-wit, Michael D. Kistler, of the one-third part of a certain mortgage in the aforesaid office at Montrose in Mortgage Book 11, page 70, bearing date 12th day of February, 1881, and made and executed by Wilson Kistler and Rufus Kistler, executors of said last will and testament, the interest named in said mortgage to be paid semi-annually to said Eliza A. Kistler, etc., during her natural life or widowhood, and after the death or remarriage of the said Eliza A. Kistler, to pay the principal sum of $10,000 to the heirs and legal representatives of the said Stephen Kistler, deceased, as directed in his last will and testament: the said sum of $10,000 is taken and treated as part of the consideration money herein mentioned and is to be deducted therefrom."

The interest of the other heirs in the land was later conveyed to the said Milo Kistler, Rufus Kistler, and Michael D. Kistler, by quitclaim deed dated May 21, 1890, duly recorded, which deed was given to confirm the title and cure any defects or omissions in any of the

proceedings, and contained a similar recital of the mortgage.

Rufus Kistler later conveyed his interest in the land, together with all his other estate, real and personal, by deed of assignment for the benefit of creditors, dated November 29, 1890, duly recorded, to W. D. B. Ainey who by regular proceedings sold that interest to Michael D. Kistler April 4, 1893, although the deed for same was not made until May 9, 1904. Rufus also by writing on May 11, 1904, assigned to Michael all his interest in the charge on the land.

By suit for partition between Michael D. Kistler and Milo Kistler, the interest of the latter became vested in Michael D. Kistler by sale and deed of trustee in partition, dated September 24, 1896, duly recorded.

By deed dated January 6, 1901, duly recorded March 6, 1901, the said Michael D. Kistler then being the sole owner of the said land, conveyed the same to the Chapot-Chamois Company, one of the defendants, for the consideration of $15,000, whereof $5,000 was paid in cash and the balance of $10,000 was left as a charge upon the land by the following recitals contained in the deed, viz.:

"And being the same land described in mortgage given by Wilson Kistler and Rufus Kistler, executors of Stephen Kistler, deceased, to Eliza A. Kistler, dated February 11, 1881, and recorded in recorder's office of Susquehanna County, Pa., in Mortgage Book No. 11, pages 70 to 73, inclusive. . . .

"And being part of the same land conveyed to the said Michael D. Kistler, grantor hereof, by E. A. Leonard, Trustee in partition of real estate as No. 181 August Term, 1894, in Common Pleas of Susquehanna County, Pa., which last mentioned deed is duly recorded in Recorder's office of Susquehanna County aforesaid in Deed Book 90, pages 243 to 247, inclusive. . . .

"The above and foregoing conveyance is made by the said Michael D. Kistler and wife to the said Chapot-Chamois Company under and subject to the lien and

charge of ten thousand dollars, and interest thereon semi-annually in favor of Eliza A. Kistler, widow of Stephen Kistler, deceased, as provided in the Mortgage last above recited, to-wit, from Stephen Kistler's executors to Eliza A. Kistler, recorded in Recorder's office of Susquehanna County, Pa., in Mortgage Book 11, pages 70 to 73, inclusive; which said incumbrance so by said mortgage made a charge upon the real estate hereby conveyed, to-wit, the interest on the said sum of ten thousand dollars to the said Eliza A. Kistler, her executors, administrators and assigns; to be paid semi-annually to her so long as she the said Eliza A. Kistler shall live or remain the widow of the said Stephen Kistler, deceased, and after her death the principal thereof to the parties thereunto entitled under the terms and provisions of the last will and testament of the said Stephen Kistler, deceased, and the Mortgage aforesaid the said Chapot-Chamois Company hereby expressly assumes and agrees to pay as part purchase money for this conveyance and the land herein described; interest upon said mortgage, for which the said grantee herein shall be liable, to be computed from January 1st, 1901; all interest prior to that date upon the same to be paid by the said Michael D. Kistler, grantor hereof."

On January 22, 1902, a judgment was entered in favor of the defendant bank against the Chapot-Chamois Company whereon execution was issued and the said land was sold by the sheriff to the bank for $50.00 on April 19, 1902. The aggregate amount of said judgment, with other judgments held by the bank against that company at the time, was about $18,000. All of the company's personal property had been previously sold by the sheriff on February 17, 1902, and its franchises were subsequently sold by him to the bank for $50.00 on May 14, 1902.

On March 20, 1903, the said bank conveyed the said land for $1.00 to the Keystone-Chamois Company, defendant, by deed of that date, which contained the re-

cital, "All the preceding property is conveyed subject to the Kistler dower mortgage, said mortgage being the first lien upon said property for a number of years."

On May 26, 1904, by deed of that date, the said Keystone Company conveyed the said land for $17,500 to the Chapot-Shirlaw Company, defendant, which has since held title to the same with exclusive possession.

The widow of Stephen Kistler died on March 4, 1904, without remarriage, having received the interest on said $10,000 from the successive owners of the land during her life; but no part of the principal has been paid; and this action was brought on August 3, 1904.

The court entered judgment for the plaintiffs. The Chapot-Shirlaw Company appealed.

*Error assigned* was in entering judgment for plaintiffs.

*John D. Miller* and *A. B. Smith*, with them *Wm. M. Post*, for appellant.—The English rule that where the owner of land conveys the legal title and takes no other security, he retains an equitable lien for such unpaid purchase price as against the vendee and his heirs, and against subsequent grantees with notice, has been repudiated in Pennsylvania: Kauffelt v. Bower, 7 S. & R. 64; Hiester v. Green, 48 Pa. 96.

In Pennsylvania, while parties may in deeds charge lands with unpaid purchase money, it must be done by clear and express words: Hiester v. Green, 48 Pa. 96; Strauss' App., 49 Pa. 353.

The fact that $10,000 purchase price is unpaid should have no weight in deciding if or not it is here clearly and expressly charged. If unpaid, he had a right to create a charge by clear and express terms, but the fact of nonpayment is of no assistance in deciding if or not it is clearly and expressly charged: Hollenberger v. Yaukey, 145 Pa. 179; Hepburn v. Snyder, 3 Pa. 72.

Massachusetts, like Pennsylvania, has repudiated the English rule: Weed Sewing Machine Co. v. Emerson, 115 Mass. 554.

*F. W. Wheaton*, with him *W. D. B. Ainey* and *T. M. Stevenson*, for appellees.—A conveyance of land "subject nevertheless to the condition and obligation in a certain article of agreement existing between parties" creates an estate upon condition, and they who are interested in the condition may enforce its performance by an action of ejectment: Bear v. Whisler, 7 Watts, 144; Strauss' App., 49 Pa. 353; Schnyder v. Orr, 149 Pa. 320; Hottenstein v. Lerch, 104 Pa. 454; Eichelberger v. Gitt, 104 Pa. 64; Dewalt's App., 20 Pa. 236; Ringrose v. Ringrose, 170 Pa. 593; Heist v. Baker, 49 Pa. 9; Rohn v. Odenwelder, 162 Pa. 346; Kensinger v. Smith, 94 Pa. 384; Helfrich v. Weaver, 61 Pa. 385; Westenberger v. Reist, 13 Pa. 594.

OPINION BY MR. JUSTICE BROWN, October 9, 1911:

In the light of the undisputed facts found by the learned trial judge specially presiding, the land which is the subject of this ejectment is so clearly liable for the payment of $10,000, with interest from March 4, 1904, that he could not have concluded otherwise. When the Keystone Chamois Company conveyed the property to the appellant, it knew, from the recital of that company's title in the deed which it took, that its title would be subject to what was termed "the Kistler dower mortgage, said mortgage being the first lien upon said property for a number of years." In the antenuptial agreement between Stephen Kistler and Eliza A. Grim, executed September 16, 1878, there is a stipulation on his part that he would make testamentary provision to secure the payment of the semiannual sum of $600 to her if she should survive him as his widow. This stipulation he carried out, and his primary purpose in doing so in his will was to secure the annuity to his widow in accordance with the antenuptial agreement; but at the same time his intention is clear that the principal sum to be invested by the executors for that purpose should, upon the death of the widow, be distributed as part of his estate. The direction or "command" in the will to invest $10,000 in a prop-

erty owned by him may seem somewhat strange, but his executors understood that they were to execute a mortgage upon it, and they did so, but failed, for some unaccountable reason, to provide for the payment of the principal sum upon the widow's death, though referring to the antenuptial agreement and will as their authority for executing the mortgage. The present owner of the property cannot, however, under the facts found, take advantage of this. Michael D. Kistler, from whom it claims title, acquired title for certain interests by deeds which expressly provided that he took the property subject to the mortgage for $10,000, executed by his father's executors, and, though they may have been careless in executing it, he knew that it was to secure not merely the annuity to the widow, but, upon her death, the payment of the principal as well. In the first deed to him, after a reference to the mortgage as securing the annuity to the widow and the payment of the prinicpal sum, upon her death, to the heirs and legal representatives of Stephen Kistler, as directed in his last will and testament, there appears the following: "The said sum of ten thousand dollars is taken and treated as part of the consideration money herein mentioned, and is to be deducted therefrom." A similar clause is in the deed of confirmation from Wilson Kistler et al. Michael D. Kistler, having clearly understood what the mortgage was intended to secure, raised no objection as to the effect of it as carelessly executed by the executors, but treated it as a lien upon the property to secure the payment of the principal sum upon his stepmother's death. Having so understood what the mortgage was intended to secure, when he sold to the Chapot Chamois Company he received from it but $5,000 of the purchase money, the deed to it from him providing that it should assume and pay, as the balance of the purchase money, the principal sum of $10,000 upon the death of Mrs. Kistler. What Michael D. Kistler and his grantees thus treated as a mortgage and first lien upon the property for unpaid purchase money became so as

between them, and subsequent grantees from them, having had express notice of it and of the effect thus given to it by their predecessors in title, the appellant cannot, either in law or in good conscience, be permitted to repudiate it as a valid lien upon the property. It continues to represent unpaid purchase money, just as it did through all the changes of title from Michael D. Kistler down to the time the appellant acquired title.

While the learned trial judge was correct in his conclusion that the land of the appellant is bound for the payment of the $10,000, we do not agree with him that the plaintiffs are the proper parties to whom payment should be made. Stephen Kistler left surviving him six children, four of whom—Wilson, Milo, Michael and Rufus—are still living. These are among the plaintiffs, Rufus being represented by his assignee for the benefit of creditors. Charles, the fifth son, died shortly after the father, leaving his entire estate to his widow and two children, who are three of the plaintiffs in the case. Wilson Kistler, his executor, was not made one of them. Mary, the sixth child, died, leaving three children, who are the remaining plaintiffs. In answer to the contention of the appellant that the proper parties had not sued for the $10,000, if its land must pay the same, the learned trial judge answered that, though "a little screw" in the pleadings may have been "loose," he had concluded to let it stay loose, as the objection was technical and of doubtful validity. In this we cannot concur. Loose pleadings are not to be encouraged and "loose screws" in them are never to be countenanced when they involve a vital question. In this case the appellant is vitally interested in knowing that, if judgment is to be cast upon its land, the proper parties have sued for the money. Objection was raised in limine to the right of these plaintiffs to sue for it. The objection was substantial and not merely technical. The sum of $10,000, with interest, secured, as already stated, by what must be regarded as a valid mortgage on the land, so far as the appellant is concerned, is still part of

the undistributed estate of Stephen Kistler, and his executors are the only persons to receive it, to be by them distributed in accordance with the terms of his will. The seventh assignment of error is sustained and the judgment is reversed.

Subsequent to the handing down of the foregoing opinion a petition was presented asking that the record be amended by substituting the executors of Stephen Kistler as plaintiffs on the record and praying that with the allowance of the amendment a venire facias de novo be awarded. Upon this petition the court made the following

### ORDER.

And now, November 3, 1911, upon due consideration of this petition the amendment prayed for is allowed upon the payment by the appellees of all costs incurred to date, and the judgment of this court as announced on October 9, 1911, will be modified upon payment of said costs by awarding a venire facias de novo, the same to be awarded when the prothonotary of the eastern district shall be notified that the costs have been paid.